UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                                                :

UNITED STATES OF AMERICA,            :

                -against-                     :                     22-CR-152 (VSB)

ROBERT ALCANTARA,                   :                     **OPINION & ORDER**

                               Defendant.        :
--------------------------------------------------------- X

VERNON S. BRODERICK, United States District Judge:

       Defendant Robert Alcantara ("Defendant" or "Alcantara") is charged with conspiracy to traffic firearms and making false statements during an interview with a special agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF"). (Doc. 1, "Complaint.") Before me are Defendant's (1) omnibus motion to suppress evidence obtained in violation of the Fourth and Fifth Amendments[1]; specifically, a blue Apple iPhone ("Blue iPhone"), a black Apple iPhone ("Black iPhone"), a black LG cellphone model LM-X420BMW ("Black LG cellphone"), a gray Apple iPad mini model A1490 ("Gray iPad"), and a residence located at 87 Homer Street, Providence, Rhode Island 02905 (Doc 36, the "Warrants Motion"), and (2) motion to suppress evidence obtained as a result of the unlawful stop, search, and seizure of the Defendant's vehicle, (Doc. 37, the "Stop Motion"). Because I find that the officers who stopped Defendant had reasonable suspicion to believe that he was committing or had committed a criminal offense, the Stop Motion is DENIED. Additionally, because I find that the challenged search warrants do not violate the Fourth Amendment, the Warrants Motion is DENIED.

---

[1] Although the title of this motion refers to the Fifth Amendment, there is no discussion of this amendment in the motion. Accordingly, I do not consider the Fifth Amendment in this Opinion & Order.

1

I.      **Background**

On November 20, 2021, law enforcement officers observed Defendant and his wife purchase parts for ghost guns[2], specifically 46 upper receivers and 45 lower receivers, from a gun show in Pennsylvania. (Doc. 36 at 2; Doc. 39 at 1–2.) The officers observed Defendant and his wife loading the parts into the trunk of "a 2020 blue Nissan Rogue bearing a Rhode Island license plate, 1AL620." (Doc. 39-1 at USAO001131.) The officers informed New York Police Department ("NYPD") officers of what they observed, as well as the make, model, year, color, and license plate number of the associated Defendant's car. (Doc. 39-1 at USAO01131.) Later that day, NYPD officers stopped Defendant's car as he drove through New York. (Doc. 36 at 2.) The officers seized the upper and lower receivers along with the Blue iPhone. (*Id.*) Defendant was arrested and read his *Miranda* rights but waived those rights and spoke to an ATF special agent. (*Id.* 2–3.) During this interrogation, Defendant explained that he was transporting over $16,000 worth of gun parts from Pennsylvania to his home in Rhode Island but claimed he did not intend to sell them. (*Id.* 3.)

On November 22, 2021, Magistrate Judge Stewart D. Aaron authorized a warrant to search the Blue iPhone for evidence of firearms trafficking. (Doc. 36-1, the "November Search Warrant.") The search revealed the Blue iPhone contained photographs of firearms and United States currency that were taken in the Dominican Republic as well as conversations involving Defendant related to buying and selling guns. (Doc. 36 at 3–4.) On January 5, 2022, Magistrate Judge Robert W. Lehrburger signed a criminal complaint that charged Defendant with conspiracy to traffic firearms and making false statements during his interview with a special

---

[2] "Ghost guns" are firearms that are sold without serial numbers or manufacturer markings. (*See* Doc. 39 at 1; Doc. 36-1 at 3.)

agent from the ATF ("Complaint").  (Doc. 1.)  That same day, Magistrate Judge Lincoln D. Almond authorized a warrant to search Defendant's home for evidence of firearms trafficking.  (Doc. 36-3.)  On January 6, 2022, Defendant was arrested pursuant to the Complaint.  (Doc. 39 at 3.)  Officers searched Defendant's house and seized the Black iPhone, the Black LG cellphone, and the Gray iPad.  (Doc. 36 at 4–5.)  On January 10, 2022, Magistrate Judge Barbara Moses authorized a search warrant for the Black iPhone, Black LG Phone, and Gray iPad.  (Doc. 36-2.)

On May 10, 2023, Defendant filed the Stop Motion and the Warrants Motion (the "Motions to Suppress").  (Docs. 36, 37.)  On May 17, 2023, the Government filed an opposition to the Motions to Suppress.  (Doc. 39.)  On May 30, 2023, Defendant filed a reply in support of the Motions to Suppress.  (Doc. 41.)  Also on May 30, the Government filed a letter motion requesting that I adjourn the previously scheduled June 14, 2023 suppression hearing.  (Doc. 42.)  On June 6, 2023, I granted the Government's motion and adjourned the suppression hearing *sine die*.  (Doc. 43.)

## II. Discussion

### A. *Stop Motion*

#### 1. Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.  Under the Fourth Amendment, an arrest qualifies as a seizure and must be made based upon probable cause.  *Ashcroft v. Al-Kidd*, 563 U.S. 731, 736 (2011).  "Probable cause exists where the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the

person to be arrested has committed or is committing a crime." *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (internal quotation marks omitted).

> The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

*United States v. Brinegar*, 338 U.S. 160, 176 (1949). Further, under the automobile exception, "police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004).

Not all stops require probable cause. A law enforcement officer can initiate an investigatory (or *Terry*) stop based upon a reasonable suspicion that the suspect "is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). The Second Circuit and Supreme Court have both recognized that the reasonable suspicion standard is "not high." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997); *United States v. Weaver,* 9 F.4th 129, 140 (2d Cir. 2021). "Whether an officer's suspicion is 'reasonable' is an objective inquiry based on the totality of the circumstances as they would appear through the eyes of a reasonable and cautious police officer, guided by his experience and training." *Grice v. McVeigh*, 873 F.3d 162, 167 (2d Cir. 2017). The reasonable suspicion standard is met where the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion on the citizen's liberty interest." *Weaver,* 9 F.4th at 140 (cleaned up).

2. **Application**

Defendant argues that the stop of his vehicle "was not supported by articulable facts giving rise to a reasonable suspicion that the Defendant may have, and might still be, engaging in

4

criminal activity." (Doc. 37 at 7.) I find that the arresting officers had probable cause, or at least a reasonable suspicion, that Defendant was committing a criminal offense. Defendant was seen by a law enforcement officer in Pennsylvania purchasing a substantial number of firearm parts that are illegal to possess in New York City. (Doc. 36-1 at 7); Administrative Code of the City of NY § 10-314. NYPD officers received a report of this activity along with the make, model, year, color, and license plate information of the vehicle into which the Defendant placed the firearms parts. (Doc. 39-1 at USAO001131.)

Defendant argues that there was no probable cause because he "was not under constant surveillance by law enforcement." (Doc. 41 at 1.) As a practical matter, Defendant was seen in Pennsylvania loading firearm parts into a car with a Rhode Island license plate, that car was subsequently stopped later the same day the parts were loaded into the car, and those parts were found in the car when it was stopped. Defendant does not explain why nor cite case law that would require that he or the car be "under constant surveillance by law enforcement" under these facts. In fact, when determining if information justifying a search is stale, the Second Circuit has cautioned against "[a]dopting an arbitrary 'cut-off' . . . beyond which probable cause ceases to exist" and instead encourages "flexibility and common sense." *United States v. Beltempo*, 675 F.2d 472, 478 (2d Cir. 1982).

Probable cause "does not demand certainty but only a fair probability that contraband or evidence of a crime will be found." *Gaskin*, 364 F.3d at 457 (internal quotation marks omitted). Here, the NYPD officers received the tip from other law enforcement officers who directly observed Defendant loading the firearm parts into the car. It is logical to believe that a vehicle in Pennsylvania with a Rhode Island license plate would travel through New York City. The informant was reliable and provided specific information about the vehicle and its occupants

which the arresting officer was able to corroborate upon seeing the vehicle. The car was stopped and searched on the same day that Defendant loaded firearm parts into the car. Although the information was provided earlier in the day, the lack of constant surveillance is not sufficient to render the information stale. *See United States v. Salomon-Mendez*, 992 F. Supp. 2d 340, 348 (S.D.N.Y. 2014) (finding that basis for a search made pursuant to the automobile exception was not stale even though information was received months earlier.) Considering the reliable nature of the informant and specificity of the information provided, the evidence is sufficient to find that the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–418 (1981); *U.S. v. Elmore*, 482 F.3d 172, 179 (2d Cir. 2007) ("[T]he informant's 'basis of knowledge' and 'veracity' (i.e., how he knows and why we should believe him) remain highly relevant to a determination of either probable cause or reasonable suspicion."). Accordingly, the Stop Motion is DENIED.

### B. *Warrants Motion*

#### 1. **Legal Standard**

According to the Fourth Amendment, "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "A defendant seeking to suppress the fruits of a search by reason of a violation of the Fourth Amendment must show that he had a 'legitimate expectation of privacy' in the place searched." *United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)); *see also United States v. Villegas*, 899 F.2d 1324, 1333 (2d Cir. 1990) ("A defendant has no right to have evidence suppressed on Fourth Amendment grounds unless the breached privacy expectation

was his own rather than that of a third party."). "This inquiry involves two distinct questions: first, whether the individual had a subjective expectation of privacy; and second, whether that expectation of privacy is one that society accepts as reasonable." *Hamilton*, 538 F.3d at 167 (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

It is axiomatic that "the proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas*, 439 U.S. at 130 n.1. Accordingly, a defendant asking a court to suppress evidence must demonstrate a legitimate expectation of privacy in the area that was searched. *See, e.g.*, *id.*; *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *see also United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014) ("As [the defendant] conceded below, he did not submit an affidavit establishing that the cell phones in question belonged to him or that he had a subjective expectation of privacy in them. Nor did [the defendant] assert a privacy interest in the cell phones in some other manner. Consequently, [the defendant] does not have standing to assert Fourth Amendment rights in those phone records.").

In making a probable cause determination, a magistrate judge is asked "to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "When reviewing a magistrate judge's probable cause determination, courts 'accord substantial deference to the magistrate's finding' and limit their review 'to whether the issuing judicial officer had a substantial basis for the finding of probable cause.'" *United States v. Garlick*, No. 22-CR-540 (VEC), 2023 WL 2575664, at *5 (S.D.N.Y. Mar. 20, 2023) (citing *United States v. Singh*, 390 F.3d 168, 181 (2d Cir. 2004)).

In addition to requiring probable cause, the Fourth Amendment also requires particularity. "Particularity is the requirement that the warrant must clearly state what is sought." *United States v. Jacobson*, 4 F. Supp. 3d 515, 521 (E.D.N.Y. 2014) (cleaned up). The particularity requirement "guards against general searches that leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized." *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990). "To be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements." *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017). The warrant must: (1) "identify the specific offense for which the police have established probable cause"; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes." *Id.* (internal quotation marks omitted).

The level of specificity required by the Fourth Amendment depends on many factors, *Jacobson*, 4 F. Supp. 3d at 522, and "does not require a perfect description of the data to be searched and seized," *Ulbricht*, 858 F.3d at 100. Indeed, "[s]earch warrants covering digital data may contain some ambiguity." *Id.* (internal quotation marks omitted). In other words, "a search warrant does not necessarily lack particularity simply because it is broad." *Id.*

### 2. Application

Here, as in *Dore*, Defendant "did not submit an affidavit establishing that the cell phones [and iPad] in question belonged to him or that he had a subjective expectation of privacy in them. Nor did [Defendant] assert a privacy interest in the cell phones in some other manner. Consequently, [Defendant] does not have standing to assert Fourth Amendment rights in those phone records." 586 F. App'x at 46. Accordingly, the Warrants Motion fails for lack of standing.

The Warrants Motion also fails on the merits. Defendant asserts that the application for

8

the November Search Warrant lacked probable cause and particularity. (Doc. 36 at 12.) Defendant further argues that because the subsequent warrant applications relied on the November Search Warrant, all of "the warrant applications in the case-at-bar are contrary to the notions of constitutionally mandated probable cause and particularity." (*Id.*) I disagree.

The November Search Warrant application identifies the specific offense for which probable cause has been established: "Title 18, United States Code, Sections 922(a) (unlawful dealing in firearms), 922(g) (possession of a firearm by a prohibited person), 924(c) (use of a firearm in connection with a crime of violence or a drug trafficking crime), 1001 (false statements), and 371 (attempt and conspiracy to commit the same)." (Doc. 36-1 at 4.) The application relies on the affidavit of an ATF special agent whose experience includes firearm trafficking investigations, ghost guns, and execution of search warrants seeking electronic information. (Doc. 36-1 at 3.)[3] The affiant's background is relevant because "experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." *Gaskin*, 364 F.3d at 457.

In addition to his training and experience, the affiant relied on information obtained from a *Mirandized* interview, during which Defendant explained that he (i) just spent over $16,000 on ghost gun parts at a gun show, (ii) already owned 50 similar guns at his home[4], (iii) has previously purchased 20 similar ghost gun kits[5], and (iv) has a YouTube channel where he discusses firearms under the username Recauche H2. (Doc. 36-1 at 7–9.) The affiant also had knowledge that the Blue iPhone was seized from Defendant's person and that Defendant had

---

[3] Document 36-1 consists of multiple, separately paginated documents. Therefore, for clarity, the cited page numbers for this document refer to the page numbers in the ECF header.

[4] Defendant later stated inconsistently that he did not have 50 firearms at his house in Rhode Island.

[5] Defendant later stated inconsistently that he did not previously purchase ghost gun kits.

9

posted YouTube videos in which he described creating ghost guns from purchased parts. (*Id.*) Considering "the totality of the circumstances" I find that the search warrant application "afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." *United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015) (*citing Gates*, 462 U.S. at 238).

Defendant also challenges the November Warrant's particularity, asserting that it "did not limit the authorization to a search of those areas of the phone that might be responsive." (Doc. 36 at 18.) This is incorrect. The November Search Warrant authorizes review of specific evidence, such as "evidence concerning the location of firearms and firearms proceeds, including Internet searches and browsing history" and "digital photographs and videos relating to the Subject Offenses, including but not limited to photographs and videos of firearms, firearm parts, and ammunition." (Doc. 36-1 at 16–17.) When a search warrant limits the scope of the search to evidence of particular crimes, and gives an "illustrative list of seizable items," courts typically find the search warrant to be sufficiently particular. *See Riley*, 906 F.2d at 844–45. Here, because the November Search Warrant meets both the probable cause and particularity requirements of the Fourth Amendment, Defendant's Warrants Motion is DENIED.

### C. *Evidentiary Hearing Request*

Defendant requests that I schedule an evidentiary hearing on his Motions to Suppress. (Doc. 36 at 22; Doc. 37 at 7.) Courts have broad discretion when determining whether an evidentiary hearing is needed to decide a motion for suppression. *See United States v. Shamsideen*, No. 03 CR. 1313(SCR), 2004 WL 1179305, at *9 (S.D.N.Y. Mar. 31, 2004). Unless a defendant makes a "sufficiently definite, specific, detailed, and nonconjectural" showing that there is a contested issue of material fact, they are not entitled to an evidentiary

hearing.  *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (cleaned up).  A defendant must file an affidavit of someone with personal knowledge in order to raise a material issue of fact.  *See United States v. Gillette*, 383 F.2d 843, 848–49 (2d Cir. 1967) ("[t]he affidavit submitted for appellant is insufficient in that it does not . . . allege personal knowledge on the part of appellant's attorney; accordingly, there was no factual issue to be resolved and the denial of a hearing was correct"); *United States v. Helbrans*, No. 19-CR-497-01 (NSR), 2021 WL 3595720, at *4 (S.D.N.Y. Aug. 13, 2021) ("[Defendant] did not submit an affidavit in support of his motion, and without a supporting affidavit of someone with personal knowledge of the underlying facts, the court need not resolve factual disputes that may be presented by the moving papers."  (internal quotation marks omitted)); *United States v. Perryman*, 2013 WL 4039374, *6 (E.D.N.Y. 2013) ("[c]ourts in this Circuit have repeatedly denied motions to suppress without a hearing where defendants have failed to provide affidavits alleging facts based on personal knowledge" (collecting cases) (cleaned up)).

Although Defendant requests an evidentiary hearing, he does not identify any facts that are at issue, nor does he submit an affidavit in support of either the Warrants Motion or the Stop Motion.  Because there is no affidavit, neither of Defendant's Motions to Suppress raise a factual dispute that would necessitate an evidentiary hearing and his requests for an evidentiary hearing are DENIED.

### III.  Conclusion

For the foregoing reasons, Defendant's Motions to Suppress and accompanying requests for a suppression hearing, (Docs. 36, 37), are DENIED and the suppression hearing scheduled which was adjourned *sine die*, (Doc. 43), is not necessary and is cancelled.  The Clerk of the Court is respectfully directed to terminate the pending gavels at Docs. 36 and 37.

SO ORDERED.

Dated:  June 8, 2023
        New York, New York

                              Vernon S. Broderick
                              United States District Judge